UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALERT ENTERPRISE, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>IMRAN RANA, et al.,<br><br>    Defendants. | Case No. 22-cv-06646-JSC<br><br>**ORDER RE: MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Re: Dkt. No. 39 |

Plaintiff Alert Enterprise, Inc. brings trade secret claims against Defendants Imran Rana and SoloInsight, Inc. (Dkt. No. 23.)[1] Alert and Mr. Rana stipulated to stay the claims against Mr. Rana pending arbitration. (Dkt. No. 34.) SoloInsight now moves to dismiss Alert's three remaining claims on two grounds: (1) Alert fails to state a claim against SoloInsight and (2) the California Uniform Trade Secrets Act ("CUTSA") supersedes two of Alert's claims. (Dkt. No. 39.) Having reviewed the parties' submissions, and having had the benefit of oral argument on March 9, 2023, the Court GRANTS SoloInsight's motion to dismiss all three claims.

## BACKGROUND

### A. Complaint Allegations

Alert is an "industry leader in cyber-physical security convergence" principally operating out of Fremont, California and incorporated in Delaware. (Dkt. No. 23 at 2-3 ¶¶ 2, 7.) In 2010, Alert hired Mr. Rana and promoted him to various roles over the following 12 years, eventually naming him Senior Vice President of Global Sales. (*Id.* at 8-9 ¶¶ 30-31.) Mr. Rana resigned from

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Alert on October 9, 2022, and subsequently began working as Chief Revenue Officer for Alert's direct competitor, SoloInsight. (*Id.* at 9, 12 ¶¶ 32, 48.)

Mr. Rana repeatedly met with SoloInsight's founder and CEO prior to his resignation, during which Defendants collectively conspired to steal confidential trade secret information from Alert. (*Id.* at 12 ¶ 46.) On four days between September 26 and October 10, 2022, Mr. Rana downloaded over 2,600 files from Alert's Google Drive, including both customer and product information Alert considers trade secrets. (*Id.* at 9-11 ¶¶ 35-36, 41-45.) Mr. Rana also transferred an unknown quantity of files from his work laptop onto a four-terabyte USB drive. (*Id.* at 13 ¶¶ 49-51.) He then employed two anti-forensic software programs to destroy evidence of his actions, delete additional files from Alert's systems, and ensure nothing could be recovered. (*Id.* at 13-14 ¶¶ 52, 56-59.) As of the complaint filing, Mr. Rana has not returned any of the files in question nor submitted his devices for examination by a neutral third party. (*Id.* at 15 ¶¶ 63-66.)

Alert notified SoloInsight of its concerns regarding Mr. Rana by two letters sent October 21 and 26, 2022. (*Id.* at 16 ¶ 67.) In these letters, Alert also requested SoloInsight "conduct a reasonable investigation and adopt measures to ensure Mr. Rana does not transfer materials to SoloInsight or otherwise use Alert trade secret information to aid SoloInsight in competing with Alert." (*Id.* at 16 ¶ 67.) On November 1, 2022, SoloInsight called Alert and represented none of Alert's files had been uploaded to its systems. (*Id.* at 16 ¶ 70.) However, SoloInsight refused to confirm whether it investigated Alert's claims or screened Mr. Rana in any way. (*Id.*)

B. **Procedural History**

Alert filed suit in this Court against Mr. Rana on October 28, 2022, claiming: (1) trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA"); (2) breach of employment contract; and (3) knowing destruction of data in violation of California Penal Code section 502(c). (Dkt. No. 1.) On November 15, 2022, Alert filed its First Amended Complaint ("FAC"), which added SoloInsight as a defendant to the DTSA and Section 502(c) claims. (Dkt. No. 23 at 17, 22.) Alert also added a third, new claim against SoloInsight in the FAC: intentional tortious interference with Mr. Rana's employment contract. (*Id.* at 21.)

Alert and Mr. Rana stipulated to a preliminary injunction staying the claims against Mr. Rana while they proceed in arbitration. (Dkt. No. 34.) SoloInsight now moves to dismiss the three remaining claims, arguing: (1) Alert fails to state a claim against SoloInsight and (2) CUTSA supersedes Alert's tortious interference and Section 502(c) claims. (Dkt. No. 39.)

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, the complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement," but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) ("Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (cleaned up). The court does not accept the plaintiff's legal assertions as true. *See United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) ("[O]nly pleaded facts, as opposed to legal conclusions, are entitled to the assumption of truth.").

## DISCUSSION

**I.     Alert Fails to Adequately Plead SoloInsight's Trade Secret Misappropriation.**

To state a claim for direct trade secret misappropriation under DTSA, a plaintiff must allege "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."[2] *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020). The statute

---

[2] In addition to these elements, DTSA requires some part of the misappropriation to occur on or after May 11, 2016, when the legislation was enacted. *Attia v. Google LLC*, 983 F.3d 420, 425 (9th Cir. 2020).

3

1    defines misappropriation as: (a) the "acquisition of a trade secret of another by a person who
2    knows or has reason to know that the trade secret was acquired by improper means;" (b) the
3    disclosure of a trade secret without the owner's consent; or (c) the use of a trade secret without the
4    owner's consent. *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020) (quoting 18 U.S.C. §§
5    1839(5)(A)-(B)).

6    SoloInsight does not dispute Alert plausibly alleges Mr. Rana misappropriated its trade
7    secrets. It argues Alert does not plausibly allege it misappropriated any trade secrets; in particular,
8    that there are no allegations suggesting Mr. Rana gave the trade secrets to SoloInsight or that, after
9    he became a SoloInsight employee, he or SoloInsight used the trade secrets, and that without such
10   allegations Alert cannot state a claim. The Court agrees.

11   **A.     Conspiracy**

12   Alert first appears to contend its allegations support an inference SoloInsight conspired
13   with Mr. Rana to steal its trade secrets. (Dkt. No. 23 ¶¶ 37, 46, 54, 80.)  It insists its allegations
14   Mr. Rana met with SoloInsight's founder and CEO several times during September and October
15   2022, announced his resignation from Alert on October 9, 2022, and downloaded massive
16   amounts of Alert's trade secrets—most of it in the days just before and just after he announced his
17   resignation from Alert—support an inference of SoloInsight's involvement in Mr. Rana's theft.
18   (*Id.* ¶¶ 36, 46.)   Not so.  They support an inference SoloInsight interviewed Mr. Rana several
19   times prior to offering him a job and that Mr. Rana had decided to join SoloInsight before he
20   downloaded the trade secrets, but not an inference that SoloInsight directed him to do so.  That
21   SoloInsight represented that Alert's confidential material had not been uploaded to its systems
22   without otherwise confirming it had conducted an investigation to support that representation does
23   not support a plausible inference SoloInsight was aware of and conspired with Mr. Rana to steal
24   Alert's confidential information.

25   **B.     Respondeat Superior**

26   Next, Alert insists it allegations are sufficient to state a misappropriation claim against
27   SoloInsight based upon respondeat superior.  Whether an employer is vicariously liable for an
28   employee's trade secret misappropriation under respondeat superior turns on whether the conduct

4

"was committed within the scope of employment." *Brain Injury Ass'n of Cal. v. Yari*, No. 19-CV-5912, 2020 WL 3643482, at *5-6 (C.D. Cal. Apr. 30, 2020). Misappropriation of trade secrets is "within the scope of employment when it is performed, at least in part, to benefit the employer, though the employer may forbid it." *SolarCity Corp. v. Pure Solar Co.*, No. 16-CV-01814, 2016 WL 11019989, at *5 (N.D. Cal. Dec. 27, 2016) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998)).

Alert argues it has plausibly alleged Mr. Rana took its trade secrets to benefit his future employer, SoloInsight, and that such allegation is sufficient to state a misappropriation claim under respondeat superior. The Court agrees Alert has plausibly alleged Mr. Rana took Alert's trade secrets with the intent to benefit his *future* employer, SoloInsight. But it has not cited any law suggesting the *future* employer of a person who steals a company's trade secrets for the benefit of the future employer is liable under respondeat superior, absent an allegation the future employer subsequently used the trade secrets or the wrongdoer used the trade secrets once he actually became employed. There are no such allegations of fact here.

None of the cases Alert cited support its theory of liability. In *Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024, 1034 (N.D. Cal. 2020), for example, a Plantronics executive (Puorro) received trade secret information from a Cisco employee (Williams) in exchange for professional coaching and advocacy for Williams' employment at Plantronics. Because Cisco and Plantronics operate in the same industry, the court held it reasonable to infer Puorro acquired the information from Williams to benefit Plantronics. *Id.* at 1057. Therefore, the misappropriation fell within Puorro's scope of employment and Cisco adequately stated a claim against Plantronics under vicarious liability for Puorro's actions. *Id.* Vicarious liability was alleged because Puorro was a Plantronics employee at the time he received the trade secrets, not because Williams took the information from Cisco for Plantronics' benefit and was later offered employment at Plantronics as a result. *Id.*; *see also Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644, 2020 WL 5074307, at *4 (N.D. Cal. Aug. 25, 2020) (finding vicarious liability claim sufficiently pled when the former employee-defendant used trade secrets to divert millions of dollars in orders from the plaintiff to the corporate defendants while the employee-defendant was an officer of the

1  corporate defendants); *Brain Injury Ass'n*, 2020 WL 3643482, at *6 (same when employee-
2  defendant created a competing business and used the plaintiff's confidential information to help
3  her new business); *SolarCity*, 2016 WL 11019989, at *5 (holding employee-defendant was acting
4  within the scope of his employment with defendant-company when he used plaintiff's confidential
5  information to solicit leads for the defendant-company). This factual distinction makes sense.
6  How can a person be acting within the scope of his employment with an entity for whom he is not
7  yet employed? *See Solar City*, 2016 WL 11019989, at *5 ("[U]nder the doctrine of respondeat
8  superior, an employer is vicariously liable for the torts *of its employees* committed within the
9  scope of the employment.") (emphasis added and cleaned up). As Alert does not allege any facts
10 that support a plausible inference Mr. Rana took, used, or disclosed Alert's trade secrets *after* he
11 became a SoloInsight employee, it does not state a misappropriation claim against SoloInsight
12 based upon respondeat superior.
13      Alert's conclusory allegations that Mr. Rana was acting as SoloInsight's agent when he
14 took the trade secrets (*see, e.g.*, Dkt. No. 23 at 9-10 ¶ 37) are insufficient. Alert must allege facts
15 that support a plausible inference he was acting as SoloInsight's agent. *See*, *e.g., Canilao v. City*
16 *Commercial Investments, LLC*, No. 20-CV-08030, 2022 WL 10584905, at *4 (N.D. Cal. Oct. 18,
17 2022) (holding allegation that third parties were "vested with agency to beautify and upkeep the
18 premise of the property as agents of the [d]efendant" to be conclusory, providing "[n]o specific
19 facts satisfying *Twombly* and *Iqbal*"). It has not done so.
20      As Alert does not plausibly allege any SoloInsight employee took, used, or disclosed
21 Alert's trade secrets while a SoloInsight employee, it does not state a DTSA claim against
22 SoloInsight based upon respondeat superior.
23      **C.    Ratification**
24      The FAC also fails to plausibly plead ratification. Ratification is "the affirmance of a prior
25 act done by another, whereby the act is given effect as if done by an agent acting with actual
26 authority." *Kristensen v. Credit Payment Services Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018)
27 (quoting *Restatement (Third) of Agency* § 4.01(1)); *see J.C. v. Choice Hotels Int'l, Inc.*, No. 20-
28 CV-00155-WHO, 2020 WL 6318707, at *8 (N.D. Cal. Oct. 28, 2020) ("Ninth Circuit courts apply

common law agency principles from the Restatement (Third) of Agency.") (internal citations omitted).

Alert's ratification theory is that once it informed SoloInsight of Mr. Rana's conduct, SoloInsight refused to conduct a reasonable investigation or adopt measures to screen Mr. Rana from using any improperly acquired information to benefit SoloInsight. But, as explained above, there are no well-pleaded facts supporting an inference that, at the time Mr. Rana committed the alleged misappropriation, Mr. Rana was acting as SoloInsight's agent. Therefore, Alert fails to plead the predicate agency relationship upon which a theory of ratification is based. *See Canilao*, 2022 WL 10584905, at *5 ("In the Ninth Circuit, agency through ratification presupposes an existing agency relationship.").

Alert cites *Cisco* to illustrate how ratification should apply "where an employer fails to investigate or respond to charges that an employee committed an intentional tort." 462 F. Supp. 3d 1024 at 1057. But in *Cisco*, the complaint included extensive factual allegations detailing how the employer-defendant had received confidential information and failed to take action to avoid benefiting from it. *Id.* at 1057-58. Upon learning confidential trade secrets from an interviewee, for example, executives for the employer-defendant requested additional information rather than cautioning the interviewee against such disclosures. *Id.* at 1057.

Here, by contrast, Alert does not allege facts supporting a plausible inference SoloInsight received, disclosed, or benefitted from Alert's confidential information. (Dkt. No. 23 at 16 ¶¶ 67-70.) SoloInsight responded to Alert's concerns on November 1, 2022, representing that none of Alert's files had been uploaded to SoloInsight's systems. (*Id.* at 16 ¶ 70.) Alert cannot state a ratification claim by merely contending that SoloInsight has not—to Alert's satisfaction—rebutted Alert's suspicion SoloInsight received confidential information. *See Cisco*, 462 F. Supp. 3d at 1057-58.

**II.    Alert Fails to Adequately Plead SoloInsight's Tortious Interference with Contract.**

Alert's second claim against SoloInsight asserts intentional interference with contractual relations between Alert and Mr. Rana. (Dkt. No. 23 at 21 ¶¶ 98-99.) Alert's theory is SoloInsight induced Mr. Rana to breach his employment contract with Alert by failing to protect and return its

7

1  confidential information.  (*Id.* at 21-22 ¶¶ 101-05.)  And in return, SoloInsight offered Mr. Rana
2  an executive position as Chief Revenue Officer.  (*Id.*)
3      To state a claim for interference with contract, the allegations must plausibly show: "(1) a
4  valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this
5  contract; (3) the defendant's intentional or negligent inducement of a breach or disruption of the
6  contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5)
7  resulting damage."  *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th
8  Cir. 2007) (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 55 (Cal. 1998)).
9      Alert fails to make factual allegations supporting a plausible inference element three is
10  met.  Although the FAC repeatedly concludes Mr. Rana acted as SoloInsight's agent, it includes
11  "no specific allegations to back up" the claim that SoloInsight induced Mr. Rana's actions.
12  *Athena Feminine Techs., Inc. v. Wilkes*, No. C 10-04868 SBA, 2011 WL 4079927, at *7 (N.D.
13  Cal. Sept. 13, 2011); *see Hong Kong Ucloudlink Network Tech. Ltd. V. Simo Holdings Inc.*, No.
14  18-CV-05031-EMC, 2019 WL 4345912, at *6 (N.D. Cal. Sept. 12, 2019) (holding a claim one
15  party "directed" another to resign in furtherance of a conspiracy to misappropriate trade secrets
16  "conclusory in nature" and could not be credited under *Twombly* or *Iqbal*).
17      Having failed to plead facts supporting a plausible inference SoloInsight intentionally or
18  negligently induced a breach of Mr. Rana's contract, Alert does not adequately state a claim for
19  tortious interference.
20  **III.**    **Alert Fails to Adequately Plead SoloInsight's Liability Under Section 502(c).**
21      Alert also argues SoloInsight is liable for Mr. Rana's violation of California Penal Code
22  section 502(c) under respondeat superior and standard conspiracy liability.  (Dkt. No. 41 at 19-20.)
23  As previously discussed, Alert does not plead factual content supporting a plausible inference of
24  SoloInsight's liability by respondeat superior.   Alert also fails to state a Section 502(c) claim
25  under standard conspiracy liability.
26      California Penal Code section 502, the Comprehensive Computer Data Access and Fraud
27  Act, imposes liability on any person who "knowingly accesses and without permission takes,
28  copies, or makes use of any data from a computer, computer system, or computer network."  Cal.

United States District Court
Northern District of California

Penal Code § 502(c)(2). Though Section 502 is a criminal statute, it empowers the owner of the affected computer system to "bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." *Id.* § 502(e)(1).

To state a claim under Section 502, a plaintiff must allege only knowing access, not unauthorized access. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016). Simply using valid login credentials and subsequently misusing the information obtained constitutes a Section 502(c) violation. *Christensen*, 828 F.3d at 790; *see Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2017 WL 783617, *5 (N.D. Cal. Mar. 1, 2017). To plead a civil conspiracy under California law, a plaintiff must allege: "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1236 (Cal. Ct. App. 1993)). To plead the "formation and operation" of a conspiracy, a plaintiff must allege an "agree[ment] to commit wrongful acts." *See id.*

Here, Alert alleges "Mr. Rana, at the direction and in conspiracy with SoloInsight, engaged in criminal acts in violation of California Penal Code section 502 by accessing and removing Alert's data without authorization and by maliciously deleting information from Alert's data storage systems." (Dkt. No. 23 at 22 ¶ 107.) Such conclusory allegations are insufficient to show SoloInsight's involvement in a conspiracy. *See Twombly*, 550 U.S. at 556-57 (holding "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show" conspiracy); *see also Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-CV-04165, 2018 WL 500243, at *3 (N.D. Cal. Jan. 22, 2018) (holding allegations one party was "acting on behalf of defendants" and "concocted a scheme" with two other parties were "conclusory" and "insufficient to show [the defendant's] involvement in a conspiracy").

Alert therefore fails to adequately plead SoloInsight's conspiracy liability for Mr. Rana's violation of Section 502(c).

### IV. CUTSA Supersedes Alert's Tortious Interference and Section 502 Claims.

"Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based on . . . the same nucleus of facts as trade secret misappropriation." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1064 (N.D. Cal. 2017) (citing Cal. Civ. Code § 3426.7(b)). To survive supersession, Plaintiffs must allege materially distinct wrongdoing such that the claim remains viable after removing the trade secret facts. *See, e.g.*, *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, No. CV 15-04125VAP (JEMx), 2016 WL 6601656, at *8 (C.D. Cal. July 25, 2016) (holding breach of fiduciary duty by use of misappropriated information is not materially distinct from CUTSA claims); *SunPower Corp. v. SolarCity*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012) (dismissing, among other claims, a tortious interference claim because the plaintiff's "property interest in non-trade secret information" is not "qualitatively different" from the interest conferred by CUTSA).

Alert argues its tortious interference and Section 502(c) claims are not based on the same nucleus of facts as its trade secret misappropriation claim. According to Alert, the misappropriation claim is based on Mr. Rana's downloading, retention, and potential disclosure of confidential information. (Dkt. No. 23 at 21 ¶ 102.) The remaining claims, by contrast, are based on Mr. Rana's deletion of files, use of anti-forensic programs, and failure to return company property. (*Id.* at 21 ¶ 101, 107.)

This is a hollow distinction. Mr. Rana deleted files and used anti-forensic programs specifically to cover up evidence of his misappropriation. (*Compare id.* at 18 ¶ 80 (describing Mr. Rana's misappropriation by accessing and downloading confidential information) *with id.* at 22 ¶ 107 (describing Mr. Rana's violation of Section 502(c) by accessing and deleting confidential information).) SoloInsight is only a relevant party "in its capacity as an entity that allegedly received or might receive misappropriated trade-secret information." (Dkt. No. 42 at 11.) Therefore, "stripped of facts supporting trade secret misappropriation," Alert's tortious interference and Section 502(c) claims have no connection to SoloInsight and do not constitute an

independent injury. *See Waymo*, 256 F. Supp. 3d at 1062. CUTSA therefore supersedes both claims.

Alert argues its Section 502(c) claim is not susceptible to supersession because CUTSA does not supersede "(3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 2436.7(b). No published California state court cases address "whether CUTSA supersedes a claim brought under [Section 502(c)], and federal courts are divided on the issue." *Phonexa Holdings, LLC v. O'Connor*, No. B308548, 2022 WL 3698220, at *28 (Cal. Ct. App. Aug. 26, 2022); *compare Henry Schein*, 2017 WL 783617, at *5 (determining plaintiff's Section 502(c) claims were based on the same nucleus of facts as trade secret misappropriation and were therefore superseded by CUTSA), *with Heieck v. Federal Signal Corp.*, No. SACV 18-02118 AG (KESx), 2019 WL 6873869, *4 (C.D. Cal. Nov. 4, 2019) (holding because Section 502(c) is a criminal statute, claims under it are not superseded by CUTSA). As discussed earlier, Section 502 allows the owner of a computer system to bring a *civil* action "against the violator for compensatory damages and injunctive relief or other equitable relief." Cal. Penal Code § 502(e)(1) (emphasis added). So, CUTSA does not improperly supersede a *criminal* remedy here, but rather another *civil* claim "based on the same nucleus of facts as trade secret misappropriation." *Waymo*, 256 F. Supp. 3d at 1064 (citing Cal. Civ. Code § 3426.7(b)).

## CONCLUSION

Accepting all well-pleaded allegations as true, Alert does not plead factual content sufficient to draw a reasonable inference SoloInsight is liable for trade secret misappropriation, tortious interference with contract, or violation of Section 502(c). The latter two claims are also superseded by CUTSA. SoloInsight's motion to dismiss is GRANTED with 20-days leave to amend. As discussed at oral argument, if Alert chooses not to amend, the Court will dismiss the claims against SoloInsight without prejudice.

//
//
//
//

**IT IS SO ORDERED.**

Dated: March 16, 2023

JACQUELINE SCOTT CORLEY
United States District Judge